UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JENNIFER ANZALDUA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-cv-01933-E |
| | § | |
| TITANLINER, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is defendant TitanLiner, Inc.'s Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 4). Having carefully considered the motion, the parties' briefing, and applicable law, the Court concludes the motion should be GRANTED.

### BACKGROUND

The following allegations are taken from plaintiff Jennifer Anzaldua's Original Petition (Doc. No. 1-2). In August 2018, TitanLiner hired Anzaldua as sales support for three sales managers. Anzaldua was offered $20 per hour, health coverage, a company vehicle, and a company cell phone.

On March 11, 2019, Anzaldua passed out at work and was transported to the hospital. She was admitted for multiple blood transfusions and remained in the hospital for four days. Thereafter, Anzaldua's oncologist advised she would need weekly iron infusions for approximately six weeks. Anzaldua informed TitanLiner account manager Nicky Cook about her

1

health issues and that she would miss one day per week for the infusions. Cook had been Anzaldua's direct supervisor but, at the time, her direct supervisor was vice president of sales Mark McIntyre.

On April 20, 2019, Anzaldua was in the hospital "with low potassium and low sodium which were both caused due to her alcohol use." She discussed her situation with Cook, and "they made the decision for [her] to go to rehab in California for a 30 day program." "McIntyre was advised that [Anzaldua] was leaving for the program on April 25, 2019." Both Cook and McIntyre told Anzaldua that they would hold her job until she returned.

On April 25, 2019, TitanLiner vice-president of finance Key Simon informed Anzaldua that she was not covered under FMLA and TitanLiner did not have to hold her position. However, according to Anzaldua, Simon also told her that her job was not in jeopardy and a temp would fill in until she returned.

Anzaldua, Simon, and a doctor at the rehab facility completed portions of temporary disability paperwork showing Anzaldua would be in treatment from April 26, 2019 until May 26, 2019. On April 26, 2019, Anzaldua emailed the packet to Kristen Summers, who handled TitanLiner benefits, and Summers advised the packet "would go to Guardian for approval."[1]

On May 6, 2019, the rehabilitation facility informed Anzaldua that her health coverage had been terminated effective May 1 and she would be responsible for payments. She then learned from TitanLiner operations supervisor Peter Boen that TitanLiner had changed health insurance carriers to UnitedHealthcare. Anzaldua verified that she had health coverage and

---

[1] Anzaldua's Original Petition does not specifically identify "Guardian," but the Court assumes from context that it is an entity that provides short-term, or temporary, disability insurance for TitanLiner employees.

received a temporary card, but the plan chosen for her did not cover out-of-network doctors or facilities. Meanwhile, Guardian advised that it had not received tax information it requested from TitanLiner's human resources department and "could not do anything" on her short-term disability claim until it did.

On May 8, 2019, McIntyre told Anzaldua that TitanLiner decided to terminate her due to her absence. Although Anzaldua "made it clear as to when she would return," McIntyre said "nobody informed him of any dates." He told Anzaldua she could reapply for her job once she was "better."

On May 14, 2019, the rehab facility asked Anzaldua "to leave due to [her] having no insurance." She "would owe them approximately over $21,500."

In this action, Anzaldua asserts claims against TitanLiner for breach of contract, promissory estoppel, and negligence-superior knowledge. Specifically, she alleges TitanLiner breached contracts by terminating her health insurance and employment. Alternatively, Anzaldua alleges she reasonably relied upon promises and representations by TitanLiner to her detriment and suffered damages, including loss of pay, commissions, and health insurance. Finally, Anzaldua asserts TitanLiner was negligent and grossly negligent by breaching its duty "to inform [Anzaldua] of the new health insurance and to keep its word that she had a job after returning from rehab."

TitanLiner moves to dismiss all of Anzaldua's claims (Doc. No. 4). It asserts 1) ERISA preempts the breach of contract, promissory estoppel, and negligence claims relating to Anzaldua's health insurance and Anzaldua has not alleged that she exhausted her administrative remedies, (2) the breach of contract and negligence claims associated with termination of her

employment are "barred as . . . antithetical to the century-plus old doctrine in Texas presuming the at-will nature of her employment relationship;" (3) Anzaldua fails to state a plausible breach of contract claim for termination of her health insurance because TitanLiner did not terminate her health insurance; (4) Anzaldua fails to properly plead the prima facie elements of a promissory estoppel claim; and (5) her negligence claims are barred by the economic loss rule.

Anzaldua responds generally that ERISA does not apply because "this was not a case of 'mishandling' of claims" but "a calculated plan to send [Anzaldua] out of state . . . so [she] would be deemed 'missing' and fired." Further, she was following TitanLiner's instructions and relying on its misrepresentations regarding her leave and insurance.

LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." *Id.* In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

4

(2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, a claim "is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

ANALYSIS

1. <u>ERISA Preemption</u>

TitanLiner first asserts ERISA completely preempts Anzaldua's claims for termination of, loss of, and lack of notice regarding, her health insurance. ERISA section 502(a)(1) provides, in relevant part, that a participant or beneficiary of an ERISA-regulated plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). When a remedy for a claim falls within the scope of or is in direct conflict with this civil enforcement section, ERISA completely preempts the claim. *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir. 2004); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004) (suit falls within scope of ERISA § 502(a)(1)(B) "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions ...."). If complete preemption exists, ERISA offers the sole framework for relief. *See Aetna Health*, 542 U.S. at 209.

5

A second form of ERISA preemption, conflict preemption, exists when a state-law claim falls outside the scope of section 502's civil enforcement provision but still "relates to" an ERISA plan under section 514. *See* U.S.C. 29 § 1144(a) (ERISA provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any [ERISA] employee benefit plan ..."). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983). A state-law cause of action that relates to an ERISA plan is preempted even if the action arises under a general state law that "in and of itself has no impact on employee benefit plans." *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1292 n.5 (5th Cir. 1989). Conflict preemption serves as a defense to a state law claim and, if it applies, requires dismissal of the claim. *See, e.g., Menchaca v. CNA Group Life Assurance Co.*, 331 F. App'x 298, 304 (5th Cir. 2009) (per curiam).

Federal courts broadly construe the ERISA preemption clause, which "is deliberately expansive." *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F3d 942, 945 (5th Cir. 1995) (citation omitted). The broad "related to" preemption, however, is not "limitless." *Rozzell v. Security Servs.*, 38 F.3d 819, 821 (5th Cir. 1994). According to the Fifth Circuit, "[s]tate law causes of action ... are barred by § 1144(a) if (1) the state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationship between the traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Hubbard*, 42 F3d at 945. "[P]reemption does not occur if the state law has only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability." *Martco*

6

*Partnership v. Lincoln Nat. Life Ins. Co.*, 86 F.3d 459, 462 (5th Cir. 1996) (citation omitted and punctuation altered).

    *(a)*    *Breach of Contract and Promissory Estoppel*

TitanLiner moves to dismiss Anzaldua's claim for breach of contract "by terminating her health insurance" and alternative promissory estoppel claim seeking damages for "loss of health insurance" because TitanLiner never terminated her health insurance and ERISA preempts the claims. To successfully plead a breach of contract claim, Anzaldua must plead facts establishing, among other elements, the existence of a valid contract and TitanLiner's breach of the contract. *See Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). For a promissory estoppel claim, she must show, among other things, a promise by TitanLiner. *See Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 864 (5th Cir. 1999).

Neither Anzaldua's Original Petition nor her response to TitanLiner's motion to dismiss identifies the contract she asserts TitanLiner breached "by terminating her health insurance." In her response, she asserts TitanLiner "represented" that her attendance at rehab "would be compensated for by STD and health insurance coverage." Her petition, however, does not allege any such representation or agreement between the parties. And, although TitanLiner changed health insurance carriers, it continued to provide health insurance for Anzaldua. Accepting all well-pleaded facts as true and viewing them in the light most favorable to Anzaldua, the Court finds she fails to state a claim for either breach of contract or promissory estoppel related to termination or loss of her health insurance. The Court need not consider TitanLiner's argument that these claims are preempted by ERISA. Indeed, it is unclear which "health insurance"

7

Anzaldua claims was terminated or lost and, thus, impossible for the Court to consider preemption.[2]

*(b)   Negligence for Failing to Provide Notice of New Health Insurance*

TitanLiner also moves to dismiss Anzaldua's claim for TitanLiner's allegedly negligent failure to provide "proper notice" of the new UnitedHealthcare insurance, which is ERISA-governed, because the claim is preempted. The claim appears to assume that, had she been notified, she could have opted for a plan under the policy that would have covered the cost of rehab. Because Anzaldua does not directly allege she is entitled to recover benefits, or seek to determine her rights to benefits, under the policy, the Court finds complete preemption does not apply.[3]

Anzaldua's negligence claim, however, clearly involves the UnitedHealthcare policy and the availability (or unavailability) of benefits under the policy and, thus, "relates to" an ERISA-covered plan. *See, e.g., Lee v. E.I. DuPont de Nemours & Co.*, 894 F.2d 755, 758 (5th Cir. 1990) (concluding ERISA preempted employee's fraud and negligent misrepresentation claims). Further, the claim directly affects the relationship between principal ERISA entities, Anzaldua as participant and beneficiary and TitanLiner as employer. *See Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 249 (5th Cir. 1990) ("[C]ourts are more likely to find that a state law

---

[2] TitanLiner included a copy of the UnitedHealthcare Insurance Company UnitedHealthcare Choice Certificate of Coverage in the appendix to its motion to dismiss (Doc. No. 6). The policy, which TitanLiner purchased effective May 1, 2019, is governed by ERISA. The Court may consider the policy in reviewing the motion to dismiss because Anzaldua's petition refers to the insurance and it is central to her claims. *See Collins*, 224 F.3d at 498–99. As stated above, however, there is no way to tell from Anzaldua's petition if the coverage she refers to in the breach of contract and promissory estoppel claims is coverage under the UnitedHealthcare policy.

[3] TitanLiner maintains Anzaldua's claim is completely preempted, but also relies on the "related to" test for conflict preemption and seeks dismissal of the claims. Accordingly, the Court construes TitanLiner to be asserting conflict preemption as well. *See, e.g., Hall v. NewMarket Corp.*, 747 F. Supp.2d 711, 715 (S.D. Miss. 2017).

relates to a benefit plan if it affects relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries—than if it affects relations between one of these entities and an outside party....") (citation omitted).  Accordingly, the Court finds the negligent claim is conflict-preempted under ERISA and should be dismissed.

2.      *Breach of Contract Claim Regarding Anzaldua's Employment*

TitanLiner moves to dismiss Anzaldua's breach of contract claim for termination of her employment because she "does not allege she was anything other than an at-will employee." From the Original Petition, it appears Anzaldua is suing on a written employment contract,[4] although she does not identify the contract.  Her response to the motion to dismiss also does not identify any contract but directs the Court to an exception to the employment at will doctrine if "an employee carries out his employer's instructions and is then fired for carrying them out."  Her petition, however, does not allege what, if anything, TitanLiner instructed Anzaldua to do. Instead, it alleges only that she decided with Cook, who was not her supervisor at the time, that she would go to rehab.  Because Anzaldua's Original Petition neither identifies the written contract she appears to rely upon nor alleges she is relying on an exception to the employment at will doctrine, the Court finds she fails to adequately plead a claim for breach of contract related to TitanLiner's termination of her employment.

3.      *Promissory Estoppel Claim Regarding Anzaldua's Employment*

TitanLiner asserts Anzaldua fails to state a cognizable claim for promissory estoppel because she does not allege any specific promises or representations made to her in accepting

---

[4] Specifically, the petition states, "[i]n the alternative, said written contract is ambiguous, and [Anzaldua] is entitled to introduce parol evidence as to its proper meaning."

employment or how her reliance was reasonably foreseeable and substantial. To support a promissory estoppel claim, a plaintiff must show "(1) a promise, (2) foreseeability of reliance thereon by the promisor, ... (3) substantial reliance by the promisee to his detriment [,] and (4) a definite finding that injustice can be avoided only by the enforcement of the promise." *Zenor*, 176 F.3d at 864. There is significant disagreement among Texas courts as to whether promissory estoppel is available to plaintiffs in the employment context. *See, e.g., id.* at 864–65 (discussing cases); *Lotito v. Knife River Corp.-S*, 391 S.W.3d 226, 227 (Tex. App.—Waco 2012, no pet.) (concluding promissory estoppel can be used only as defensive theory in employment context and not as basis for affirmative relief).

To show a promise, Anzaldua directs us to her petition's allegation that Cook and McIntyre "advised [her] that they were holding her job and they were just going to bring in a temp until she returned." She pleads no facts, however, to show she relied on their statements to her detriment. To the contrary, she alleges she decided, along with Cook, to go to the rehab facility. Her supervisor, McIntyre, "was advised" she was leaving. Thereafter, Cook and McIntyre told Anzaldua they would hold her job until she returned. Thus, even if promissory estoppel is available as a basis for affirmative relief, the Court finds Anzaldua's allegations are insufficient to survive TitanLiner's 12(b)(6) challenge because her petition does not plead facts to show she relied on TitanLiner's promises.

4.  *Negligence-Supervisor Liability Regarding Anzaldua's Employment*

TitanLiner moves to dismiss Anzaldua's negligence claim based on TitanLiner's duty "to keep its word that she had a job after returning from rehab," contending the claim is barred by the economic loss rule. In response, Anzaldua does not contest whether the economic loss rule

applies, but states that, "[i]n the event that [Anzaldua's] managers claim that they did not intentionally make the foregoing misrepresentations and agreements then [TitanLiner] should be liable for [its] failure to investigate properly, given the serious financial and employment harm [Anzaldua] has suffered."

Under the economic loss rule, a party may not recover in tort for purely economic losses suffered to the subject matter of a contract. *See Shadyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415, 418 (Tex. 2011). The injury that gives rise to Anzaldua's negligence claim – the loss of her employment and related benefits – is the same injury alleged in connection with her breach of contract claim. Because the injury is an economic loss pursuant to the terms of an alleged contract, the Court finds the economic loss rule applies to bar her negligence claim. *See, e.g., Agillion, Inc. v. Oliver*, 114 S.W.3d 86, 91 (Tex. App.—Austin 2003, no pet.).

The Court also disagrees with Anzaldua's assertion that, absent any agreements or misrepresentations, TitanLiner "should be liable for [its] failure to investigate properly, given the serious financial and employment harm [Anzaldua] has suffered." Anzaldua's Original Petition does not plead a claim for negligent investigation. Further, Texas courts have refused to recognize a cause of action for negligent investigation. *See, e.g., Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 610 (Tex. 2002). To the contrary, "an employer 'is at liberty to discharge [an employee] ... for a reason based on incorrect information, even if that information [is] carelessly gathered.'" *Mission Petroleum Carriers, Inc. v. Solomon*, 106 S.W.3d 705, 716 (Tex. 2003) (quoting *Johnson v Delchamps, Inc.*, 897 F.2d 808, 811 (5th Cir. 1990)). Accordingly, the Court finds Anzaldua fails to adequately plead her negligence-superior knowledge claim.

CONCLUSION

For the foregoing reasons, TitanLiner's motion to dismiss (Doc. No. 4) is **GRANTED**, and the Court **DISMISSES** Anzaldua's claims **without prejudice**. Anzaldua has requested, in the event the Court deems her factual allegations insufficient, that she be allowed to replead. Therefore, if she can in good faith replead facts to support her claims, Anzaldua may do so on or before April 3, 2020. *See* FED. R. CIV. P. 15(a)(2). If repleading, Anzaldua should evaluate whether claims pertaining to her employer health insurance plans and benefits should be refiled under ERISA civil-enforcement provisions. *See Ford v. Freemen*, 388 F. Supp.2d 692, 704 (N.D. Tex. 2019). If she does not replead her claims, the disposition of the claims will be converted into dismissal with prejudice.

**SO ORDERED**.

Signed March 13, 2020.

_____
ADA BROWN
UNITED STATES DISTRICT JUDGE